STATE EX REL. STONE, RECEIVER *v.* UNITED STATES FIDELITY AND GUARANTY COMPANY

[No. 17,696. Filed May 3, 1948. Rehearing denied June 9, 1948. Transfer denied February 23, 1949.]

64

On Petition for Rehearing. *Petition denied.*

*Bachelder, Bachelder & Fife;* and *H. K. Bachelder*, all of Indianapolis; and *Otis E. Gulley,* of Danville, for appellant.

*R. F. Davidson;* and *Stevenson & Kendall*, all of Danville, for appellees.

DRAPER, C. J.—This is an appeal from a judgment of the Hendricks Circuit Court denying recovery from the surety of a bond given by one George N. Montgomery, as principal, and United States Fidelity and Guaranty Company, as surety, in a certain receivership proceeding.

The evidence consists of a paragraphed stipulation filed by each party, each party reserving to himself, however, the right to object to any portion of the stipulation filed by his opponent, on the sole ground that the same is not pertinent to the issues.

By the stipulations it appears that, prior to April 1926, the National Automobile Insurance Association

was an association of individuals and companies exchanging reciprocal or inter-insurance contracts in the state of Indiana under the provisions of § 39-2801 et seq., Burns' 1933.

In April 1926 a suit was filed in the Superior Court of Marion County seeking a money judgment and the appointment of a receiver for said association. A receiver was appointed, but he was shortly discharged and was succeeded on June 24, 1926 by George N. Montgomery. On the same day the bond above referred to was executed, filed and approved pursuant to the provisions of § 3-2605, Burns' 1933. Omitting caption, signatures and approval, it reads as follows:

"KNOW ALL MEN BY THESE PRESENTS, that we GEORGE N. MONTGOMERY as principal, and UNITED STATES FIDELITY & GUARANTY COMPANY, as sureties, are held and bound to the Clerk of Marion Circuit Court in the penal sum of Fifty Thousand & no/100 ($50,000.00) Dollars, for the payment of which well and truly to be made, without relief from valuation laws, we bind ourselves, our heirs, executors, and administrators jointly and severally firmly by these presents.

"Sealed and dated, this 24th day of June, 1926.

"THE CONDITION OF THIS OBLIGATION IS SUCH, that whereas the above named and bounden George N. Montgomery has been duly appointed by the Judge of Marion Superior Court Room 4 in the State of Indiana, Receiver in a cause pending in said Court wherein Thomas E. Clifford plaintiff, and National Auto Insurance Association defendant, being Cause numbered 35457 on the Docket of said Court.

"NOW if the said George N. Montgomery shall faithfully discharge his duties as such Receiver in said Action and obey the orders of said Court and the Judge thereof, then said obligation shall be void, otherwise to remain in full force and effect."

While acting as such receiver, Montgomery received assets of the subscribers at said association valued at about $30,000, all of which were appropriated to the use of such receivership, and none of which were appriated to his own use.

On February 16, 1927, this court held in *Turner* v. *Henshaw*, 86 Ind. App. 565, 155 N. E. 222, that the appointment of a receiver for such as the National Automobile Insurance Association was wholly void, since such a so-called association of individuals and companies was not a corporation or legal entity of any kind, but was merely the name of a place where subscribers exchanged contracts of indemnity through their attorney-in-fact.

Closely following that decision, and on April 4, 1927, one Fae Patrick (appellant's predecessor, now dead) was appointed and qualified as receiver of the *assets, property and funds of the subscribers* of National Automobile Insurance Association by the Vanderburgh Superior Court.* He unsuccessfully demanded from Montgomery the money and property of said subscribers in the latter's hands, and later, on June 2, 1927, filed suit therefor in the Marion Circuit Court, making Montgomery a party defendant in his individual capacity and as "purported receiver" for said association. During the pendency of that suit Montgomery died and his administrator was substituted as party defendant. That suit was venued to and tried in the Shelby Circuit Court and on March 4, 1931, resulted in a judgment against the administrator for $35,206.03. That judgment was affirmed by this court in *Givan* v. *Patrick* (1933), 96 Ind. App. 189, 184 N. E. 823.

The surety executed the bond in question for hire. It became aware of the pendency of the suit which

---

* The validity or effectiveness of that order is not challenged.

resulted in the judgment of the Shelby Circuit Court, but was not a party thereto and made no defense thereof. None of the money in question found its way into Montgomery's estate. The estate was insolvent and the judgment against Montgomery's administrator remains wholly unpaid. That judgment, with interest, is the basis of this action.

The foregoing appears by stipulations to which no objection was made by either party. We now condense appellee's fifth paragraph of stipulation with some particularity because its admissibility was objected to by the appellant on the ground that the evidentiary matters disclosed therein had been merged in the judgment rendered in the Shelby Circuit Court; were not properly before the court for determination in this case; and thus, had no bearing upon the issues presented below.

In said fifth paragraph the following facts are made to appear. Subsequent to the filing of said bond Montgomery received from his predecessor approximately $24,500 together with furniture and equipment constituting the property of the subscribers at said association. During the administration of said trust he received, as such receiver, certain interest on investments and collected from the subscribers at said association premium assessments totaling about $3500, which amount was voluntarily paid by said subscribers to said Montgomery as receiver. The Underwriters Exchange Incorporated, as attorney-in-fact for the subscribers at said association, was present in court when Montgomery's predecessor was appointed as receiver, and made no objection to said appointment, and after said appointment the said attorney-in-fact voluntarily turned over to Montgomery's predecessor all the assets and property in its possession belonging to said subscribers. On September 27, 1927, Mont-

gomery filed his final report as receiver which showed receipts of $28,688.73 and expenditures of $21,296.47, all of which sums were expended under and pursuant to the order of court in which such proceedings were pending. This report was accompanied by Montgomery's resignation. The court thereupon made a final allowance of fees to Montgomery and his attorney, and directed that the balance in his hands be paid to the clerk of the court, and gave ten days within which exceptions might be filed. Eleven days later, and on October 8, 1927, the attorney-in-fact filed exceptions to Montgomery's report in which it alleged that his appointment was null and void, and asked that the assets received by him totaling $28,688.73 be ordered restored to the attorney-in-fact. On motion of Montgomery and on its own motion the court struck out said exceptions and entered a judgment approving said report, and discharging Montgomery from further duties and from his bond and trust. This ruling was appealed to this court and the appeal was dismissed with opinion by this court in *Underwriters Exchange, Inc.* v. *Montgomery, Rec.* (1930), 91 Ind. App. 24, 169 N. E. 54.

None of the facts heretofore stated, including those contained in appellee's fifth paragraph of stipulation are contradicted. Those stipulated in appellee's fifth paragraph were substantially those alleged in appellee's third, fourth and fifth paragraphs of answer to appellant's complaint, to which paragraphs of answer the appellant addressed a demurrer which was overruled. The correctness of that ruling is the first question presented by appellant's assignment of error. Appellant also assigns error in the overruling of his motion for new trial, which asserts the insufficiency of the evidence and the illegality of the decision and further

asserts error in the admission of the evidence contained in appellee's fifth paragraph of stipulation.

We think the ruling on demurrer has become immaterial. Any error in overruling the demurrer would be harmless, since all of the facts were stipulated, and a correct declaration or statement of the law as applied to the relevant facts stipulated can be made without regard to the sufficiency of the pleadings. The situation is much like that obtaining where the facts have been specially found, and the same rule applies. *Lind* v. *Douglass* (1925), 83 Ind. App. 380, 148 N. E. 497.

Of the facts stipulated in appellee's fifth paragraph of stipulation, the appellee here seems to urge, in defense of the judgment below, only those which show that the court of Montgomery's appointment approved his acts and conduct as receiver, and discharged him from his bond and trust, it being appellee's contention that by reason thereof the appellee was completely released from any and all liability on the bond. The appellant, on the other hand, asserts the inadmissibility of that evidence and further asserts that such defense is not now available to the surety, since the latter is, in the absence of fraud, bound by all matters which were or could have been adjudicated in the prior action against the principal, of which action the surety had knowledge but which action it did not choose to defend.

Assuming the admissibility of that evidence for the purpose of quickly reaching the substantial question involved, we are of the opinion that the order referred to did not constitute a defense. Both parties recognize and assert the fact to be that Montgomery's appointment as receiver was wholly void. This court took cognizance of that fact in *Underwriters Exchange, Inc.* v. *Montgomery, Rec., supra.* If the order

appointing Montgomery as receiver was void it follows, we think, that all further orders having to do with the attempted receivership were also without authority of law and wholly void, including the final order approving Montgomery's doings and discharging him from his bond and trust, which order was made and entered while the action to determine Montgomery's right to the property was pending in the Shelby Circuit Court. That order, like the order of Montgomery's appointment, being a complete nullity, it could afford no protection to the surety. *Kelleam* v. *Maryland Casualty Co. of Baltimore* (1940), 112 Fed. 2d 940, 311 U. S. 627, 85 L. Ed. 398, 61 S. Ct. 48, reversed on other grounds in 312 U. S. 377, 85 L. Ed. 899, 61 S. Ct. 595; 49 C. J. S., § 449, p. 878.

The appellant says the appellee is bound by the judgment against Montgomery's administrator. Regardless of the extent to which, and the circumstances under which, a judgment against a principal is binding upon his surety, it is beyond doubt that the surety can defend, when sued on the bond, on any ground personal to himself which was not an issue, and could not be made an issue in the action against the principal. *City of Pasco* v. *Pacific Coast Casualty Co.* (1918), 101 Wash. 496, 172 Pac. 566, L. R. A. 1918 E 811. Thus, we think the appellee could defend this case on the ground that the bond was void; or that, under the circumstances of the case, no liability under it could attach to the surety.

The appellee says the bond was void, and asserts that "a bond executed in a judicial proceeding which has been declared to be null and void is likewise void and of no force in law," and no recovery can be had thereon. The appellant, on the other hand, insists that the appellee, as a surety for hire on the bond, is estopped

from defending its liability on the claim of invalidity of the principal's appointment.

An examination of the authorities convinces us that a bond exacted in a judicial proceeding by a court having no jurisdiction of the action is not only void, but no recovery can be had thereon. It was so held in *Caffrey* v. *Dudgeon et al.* (1872), 38 Ind. 512, a case cited by the appellee. In that case a complaint had been filed before a justice of the peace to replevin personal property of the value of $450. A replevin bond was filed and approved; the writ issued and by means of it the plaintiff and principal on the bond obtained possession of the property. The cause was later dismissed by the justice for want of jurisdiction of the subject matter and the property ordered returned to the defendant, but the plaintiff failed and refused to redeliver the property. The defandant filed suit on the bond and a demurrer to his complaint was sustained. Many authorities were reviewed, and it was held that since the justice had no jurisdiction of the cause, he had no authority to accept or approve a bond in replevin, or to issue a writ or to do anything whatever in the cause, and the bond was void and no recovery could be had thereon. The court further held that the parties were not estopped to deny the truthfulness of the admissions and of the recitals of fact in the bond which was taken by a court having no jurisdiction of the subject matter.

The appellee further relies upon *Olds and Others* v. *State, on the Relation of Brookins* (1841), 6 Blackf. 91 and particularly upon *State ex rel. Clawson et al.* v. *Younts* (1883), 89 Ind. 313. In the Olds case a justice of the peace undertook to appoint a constable who filed a bond with the justice conditioned that he would faithfully discharge the duties of his office. The con-

stable, acting as such, collected the money due on an execution and kept it. The constable was not appointed for a special case. His appointment was to supply a vacancy occasioned by the resignation of one of the regularly appointed constables, but at the time of the appointment and posting of the bond there were two qualified constables in the township. In a suit on the bond it was held that since the justice had no authority to make the appointment, both the appointment and the bond were void and a judgment for recovery on the bond was reversed. In that case the justice had no authority to appoint anyone as an additional constable for no vacancy existed.

*State ex rel. Clawson et al.* v. *Younts, supra,* involved an estate matter in which one Restine was appointed by the court as commissioner to sell certain real estate of the decedent to pay certain legacies provided for in the will, and as such commissioner he executed a bond with sureties conditioned that he would faithfully discharge his duties as such commissioner. Restine, as such commissioner sold the real estate as ordered by the court and converted the proceeds to his own use. There was no provision in the law for the appointment of a commissioner to sell real estate and Restine's appointment as such was wholly unauthorized. His appointment was therefore void; the bond was void and the sale was void. In that case the court undertook to appoint an officer who was unknown to the law. Neither of the cases just considered is decisive of the question here. The question of estoppel was not raised in either of them. In each the court was undertaking to perform an act wholly beyond its authority by making an appointment it had no right to make. In the case before us the court had jurisdiction to appoint a receiver, but did so erroneously. Those

cases therefore seem to us to be distinguishable, but if not, we consider them out of line with other cases in both this and the Supreme Court.

We have said that a bond exacted in a judicial proceeding by a court having no jurisdiction of the action is both void and unenforcible, but this is not a case where the court had no jurisdiction of the action. Neither is it a case where the court undertook to make an appointment wholly outside the law. The Superior Court of Marion County is a court of general jurisdiction having full authority to appoint a receiver in a proper case. The receivership matter was in no sense the foundation of the jurisdiction. It was ancillary to the main action. Montgomery's appointment, as we have pointed out, was invalid, but it is not contended that the court did not have jurisdiction of the action and the right to appoint a receiver in a proper case. We are, therefore, confronted with the question of liability on a bond given pursuant to a void appointment by a court having jurisdiction of the action.

We think it is the rule that where a court has jurisdiction of a cause and the right to appoint an officer such as a guardian, administrator or receiver, the surety upon the bond required by statute and furnished by the appointee will, in the absence of fraud, duress, or perhaps other circumstances not present in this case, be estopped to deny the recitals of the bond, and will not be permitted to defend on the ground of invalidity or illegality in the appointment. It would unduly extend this opinion to here state the reasons for the rule or to review the many cases announcing it. The rule as stated is amply supported by the following: *Gray et al.* v. *State ex rel. Mills* (1881), 78 Ind. 68; *State ex rel. Metsker, Guardian* v.

*Mills et al.* (1882), 82 Ind. 126; *Davis* v. *Bickel* (1900), 25 Ind. App. 378, 58 N. E. 207; *State ex rel. Haines et al.* v. *Parrish et al.* (1891), 1 Ind. App. 441, 27 N. E. 652; *State ex rel. Remo* v. *Golding* (1902), 28 Ind. App. 233, 62 N. E. 502; *Lucas* v. *Shepherd* (1861), 16 Ind. 368; *Romy* v. *State ex rel. Brannan, Admr.* (1904), 32 Ind. App. 146, 67 N. E. 998.

If then, the surety may not deny the recitals of the bond or defend on the ground of invalidity or illegality in the appointment, we are required, for the purpose of examining into his conduct and determining whether such created a liability on the bond, to consider Montgomery's appointment as being valid. If so, he was required as such receiver to take charge and possession of the assets and property of the National Automobile Insurance Association and administer the same under the order of the court. But said association, being nothing more than a name, had no assets or property for Montgomery to take, and he took none. He did, however, receive and dispose of assets and property belonging to others, which resulted in its loss to the rightful owners. For such conduct the appellant says the surety is liable on the bond.

To cast liability on the appellee, the appellant relies upon *The State, on the Relation of McCullough* v. *Druly and Another* (1852), 3 Ind. 431 as a case holding that "the surety on the bond of a public official is liable for the conversion of the property of a third person by the principal on the bond, purporting to act in his official capacity." In that case a constable, after having levied on a sufficiency of the goods of the principal debtor to satisfy the execution, and wasted them, proceeded to levy upon, and make the money out of the property of the bail. The Supreme Court said the second levy was an act of malfeasance committed by the

constable in his official capacity; it was a breach of official duty and the sureties were liable on the constable's bond.

To bring this case within that rule the appellant insists that a receivership bond is an official bond and the liabilities of the surety are the same as on the bond of a public official. He cites as authority the following: *U. S. F. & G. Co.* v. *Poetker* (1913), 180 Ind. 255, 102 N. E. 372; *Lancashire Indemnity Co.* v. *Community Savings and Loan Assoc.* (1936), 102 Ind. App. 665, 4 N. E. 2d 688; *Hack* v. *American Surety Co.* (1938), 96 F. 2d 939; *General Asbestos etc. Co.* v. *Aetna etc. Co.* (1935), 101 Ind. App. 207, 198 N. E. 813; *Southern Surety Co.* v. *Kinney* (1920), 74 Ind. App. 205, 127 N. E. 575.

The first three of those cases involved officers of a bank or savings and loan association; the fourth involves a contractor's bond; and the last the bond of a deputy county treasurer. Those cases concern bonds into which restrictive conditions not authorized by the statute had been written, and it was held in each that such conditions were surplusage and without binding effect. The bonds involved in those cases were said to be official bonds, and it was said that a bond taken in pursuance of a public statute or taken pursuant to the requirements of a statute fall under the description of official bonds, and the terms of the statute requiring the bond constitute a part of the contract whether written into the bond or not. In none of those cases had the principal on the bond taken the money of a third person. They mostly had to do with the misappropriation of money the principals on the bonds were authorized by their employment to handle, and the misappropriation of such funds was held to be a violation

of the sureties undertaking that the principal would honestly and faithfully discharge his duties.

No dishonesty is involved in this case. The bond has no defect either in form or substance or recital or condition. It appears to have been executed in ▮▮ exact conformity to the statute which required it, which is § 3-2512 of Burns' 1946 Replacement. The bond as required by that section must provide that the receiver will faithfully discharge the duties of receiver and the bond in this case so provided, and it would, therefore, seem unnecessary for the purposes of this case to determine whether or not the bond in question could be called an official bond, for the rule is that the engagement of the surety upon an official bond extends only to the failure of duty in respect to official acts to be performed by virtue of the trust reposed in the officer, and this being a suit on a contract, no recovery can be had unless there has been a breach of some duty imposed by the terms of the bond. *State ex rel. Abdiehl* v. *Sriver* (1936), 210 Ind. 129, 1 N. E. 2d 579.

Receiver's bonds are very similar in their nature to bonds of executors and administrators. Ann. Cas. 1915 D, 408. "It is held that the sureties on the bond of an executor or administrator are not liable for property received by him, and to which as the legal representative of the decedent he was not entitled, though the court erroneously authorized him to receive it." 11 Am. & Eng. Ency. of Law, p. 883 (2nd Ed.).

In the case of *Jenkins, Admr.* v. *Lemonds, et al.* (1868), 29 Ind. 294, an administrator of an estate had paid certain sums of money into the office of the clerk of the court for which sums of money the clerk had refused to account. It developed at the trial of the cause that the statute under which the administrator thought he was operating in making such payments

had been repealed and there was in truth no law authorizing the clerk to receive such payments at the time they were so paid into his office. In an action against the clerk and the sureties on his bond our Supreme Court said:

"The liability of the sureties upon the bond is not to be extended by implication beyond the terms of the contract. They were only liable for the failure of the clerk to discharge his official duties. It was not his duty nor could he as clerk receive the money belonging to an estate from the hands of the administrator."

In *High on Receivers,* § 133b (4th Ed.), it is said that "The liability of a surety upon the bond of a receiver conditioned for the faithful performance of his duties is limited to cases of a violation of those duties which may properly be said to be within the scope of the order of appointment."

In II Tardy, *Smith on Receivers* 2075 (2nd Ed.), it is said: "Surety on a receiver's bond is not liable for loss or misapplication of property not involved in the receivership proceedings even though the receiver takes possession of it."

*State* v. *Mors* (1932), 112 W. Va. 544, 165 S. E. 807, was an action in debt on a special receiver's bond. One Mors was appointed special receiver for a corporation and as such was required to file a receiver's bond. Mors, as receiver, was granted permission to produce coal from two of the corporation's mines only on condition that the cost thereof should be paid by the plaintiffs, and no liability or expense should be incurred by him as such receiver. He thereafter bought merchandise in his capacity as special receiver for use at the mines, thus incurring an obligation in contravention of the order. He was not acting within the scope and purview of his authority when he pur-

chased the merchandise, but on the contrary acted in direct violation thereof. In the *Syllabus by the Court* it was said:

"The liability of a surety on a bond of a receiver, conditioned for the faithful performance of all the duties required of him by law and to faithfully account for all moneys received by him, is limited to cases of violation of those duties which may properly be said to be within the scope of the order of appointment. Accordingly, where a receiver in violation of limitations of authority placed on him by the court, has incurred obligations for merchandise purchased by him, the surety on his bond is not liable for the amount of such obligations, since the act of the receiver was entirely beyond the scope of his authority."

In *Johnson* v. *Farm & Home Svgs. & Loan Assn.* (1930), 131 Kans. 238, 289 Pac. 396, 71 A. L. R. 779, the receiver of a bank brought an action against a Savings & Loan Association to recover on account of a fraudulent transfer of assets which resulted in an unlawful preference to the Savings & Loan Association. The latter pleaded by way of set-off that the receiver had unlawfully taken possession of certain of its property. The court said:

"Is there any merit in the cause of action pleaded by way of set-off by the defendant based upon wrongful taking possession of its property and assets? There is not. The receiver was appointed for the purpose of taking charge of the affairs of the defunct bank. If he over-stepped the bounds of his authority and took possession of other assets and property belonging to a person or corporation other than the bank, then he was outside the scope of his employment and acted without authority. He is not liable in his official capacity, but, if liable at all, would be liable only in his individual capacity.

"34 Cyc. 410, states the rule as follows: '. . . A receiver is liable only in his individual capacity by reason of transactions outside of or in excess of

his authority. As to other property than that in the custody of the court, the management of which is voluntarily assumed and over which the court had no control, he stands in his natural person, and responsible for its careful and proper management to all those whose relations to it are such that they may suffer from his neglect of duty, and if he assumes wrongfully to take and hold property not embraced in the order of appointment, or forc- ibly to take property from a stranger, he is not acting as the officer or representative of the court but is a mere trespasser, and the rightful owner of the property may sue him in any appropriate form of action for damages or to recover possession of the property illegally taken or detained.'

"The reason is apparent. The assets so placed in charge of the receiver become a trust fund for the benefit of creditors. If an action based on a tort of the receiver were permitted to be brought against him in his official capacity, then the trust estate might be dissipated by judgments obtained against the receiver. To permit this would be to defeat the ends of receivership; i. e., to secure the preservation of the assets of an insolvent debtor and a ratable distribution thereof to the creditors."

We think it follows from the foregoing that Montgomery, though liable in his individual capacity for the taking of the property in question committed no breach of official duty, was not liable in his official capacity; the appellee was not liable as surety on his bond; and the judgment of the court below was right.

Judgment affirmed.

NOTE.—Reported in 78 N. E. 2d 881.

## ON PETITION FOR REHEARING

DRAPER, P. J.—In his petition for rehearing the appellant says our opinion in this case is out of harmony with the more recent decisions of this and the

Supreme Court, and that the appellee should be held liable whether Montgomery was acting *virtute oficii* or *colore oficii*. He asserts the liability of the appellee on this bond is as broad as the liability of the surety on the bond of a sheriff, and so reasons that we erred in our decision of this case.

We think the trend is, in general, in the direction of broadening liability. The recent case of *State ex rel. Penrod* v. *French* (1944), 222 Ind. 145, 51 N. E. 2d 858, involved the unlawful arrest and detention of one Penrod, and resulted in a suit against the sheriff and the surety on his bond. Our Supreme Court said in that case that the surety on the sheriff's bond should be held liable for an unlawful arrest made under color of office, though the arrest was made beyond the boundaries of the county. But in deciding that case the Supreme Court noted a clear distinction between cases involving the liability of the surety on the bond of a sheriff, and cases involving the liability of the surety on the bond of an official who receives and misappropriates money which the law does not authorize him to receive as such official; and so suggested, at least inferentially, that the same yardstick should not be applied.

Our attention has not been called to any case holding that the surety on a receiver's bond is liable for either the taking or the loss or misapplication of money or property which the receiver as such was not entitled to take. If such a rule is to become the law in Indiana, we think it should be established by the legislature or initiated by our Supreme Court.

The petition for rehearing is denied.

NOTE.—Reported in 78 N. E. 2d 881.